# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

DOMINICK P.,

                                    Plaintiff,

        v.                                                 3:20-CV-538
                                                     (ATB)

ANDREW SAUL,

                                    Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
MICHAEL L. HENRY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 2, 7).

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 5, 2017 alleging disability beginning May 16, 2016.  (Administrative Transcript ("T") at 98, 158, 197).  His application was denied initially on March 31, 2017.  (T. 99-102). At the request of the plaintiff, Administrative Law Judge ("ALJ") Robyn L. Hoffman conducted a hearing on December 12, 2018, at which plaintiff gave testimony. (T. 46-86).

In a decision dated March 5, 2019, the ALJ found that plaintiff was not disabled.

(T. 11-19).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 9, 2020. (T. 1-4).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

2

> [Commissioner ] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859
F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its
interpretation of the administrative record for that of the Commissioner, if the record
contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v.
Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence
in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles
v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ
explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ
cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz
v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No.
09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was born on September 15, 1982, making him 36 years old as of the date
of the administrative hearing.  (T. 51).  He lived in a house with his fiancée and 8 year-
old son.  (T. 73-74).  Plaintiff had a GED and his driver's license, but drove
infrequently. (T. 53, 81).  He also held a commercial driver's license at one time, which
was expired at the time of the hearing. (T. 53-54).  Prior to his alleged onset date,
plaintiff worked in various employment positions with significant lifting requirements,
including medical transport driver, hotel baggage handler, palletizer, lineman, and a
seasonal position at Lowes.  (T.  55-64).

Plaintiff experienced back pain and muscle spasms since 2014, for which he

sought medical treatment through his primary care physician. (T. 68-69). In 2016, plaintiff was working as a medical transport driver when he felt a pain in his right side and became unable to get in and out of the van. (T. 65). Plaintiff was referred to a specialist and learned that his his "L5 was protruding." (T. 64). He was told that he needed spine surgery to relieve the "pinching" of his sciatic nerve. (T. 64-65). Plaintiff had lumbar surgery in May 2016. He did not return to work after the surgery, because he could not physically perform the work. (T. 65-66). Since the surgery, plaintiff has relied on his fiancée and mother for financial assistance. (T. 66-67). In November 2018, plaintiff was involved in a car accident. A CT scan revealed that his "L5 was protruding," and he had "a lot of inflammation." (T. 71).

Plaintiff testified that he experienced back symptoms six to seven days out of the week. (T. 69). The pain radiated from the bottom of his back to his right side. (T. 69-70). Sometimes the pain radiated down his right leg into his heel. (T. 70). Although surgery alleviated his leg pain to some extent, it did not resolve his back pain. (*Id.*). The pain medication he took caused side effects including weakness, fatigue, and shakiness. (T. 73). He usually rested for an hour during the day. (*Id.*). Plaintiff's fiancée performed the grocery shopping and household chores. (T. 74-75). Generally, he spent his days lying in bed or in a chair. (T. 76). He woke from back pain every two to four hours at night. (*Id.*).

## IV.  **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since his application date of May 16, 2016. (T. 13-14). Next, at step two, the ALJ

found that plaintiff's lumbar spine degenerative disc disease, status-post laminectomy, was a severe impairment.  (T. 14-15).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 15).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform the full range of light work.  (T. 16).  She specified that plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, and stand or walk for approximately six hours in an eight-hour workday with normal breaks.  (*Id.*).

Next, the ALJ determined that transferability was not an issue because plaintiff's past relevant work was unskilled.  (T. 18).  Based on an RFC for the full range of light work, and "considering the [plaintiff's] age, education, and work experience," the ALJ concluded that a finding of "not disabled" was directed by the Medical-Vocational Guidelines.  (*Id.*).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.    The ALJ improperly substituted her lay judgment for competent medical opinion, and failed to properly weight the medical opinions of evidence. (Plaintiff's Brief ("Pl.'s Br.") at 6-20) (Dkt. No. 11).

2.    The ALJ failed to include any postural or non-exertional limitations. (Pl.'s Br. at 20-22).

3.    The ALJ failed to consult with a vocational expert.  (Pl.'s Br. at 22-23).

4.      The ALJ failed to develop the record.  (Pl.'s Br. at 23-24).

Defendant argues that the ALJ properly considered the evidence of record, and that the Commissioner's decision is otherwise supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 13-40) (Dkt. No. 15). For the following reasons, the court concludes that the ALJ's RFC determination was not supported by substantial evidence. As a result, the ALJ's analysis at step five and the ultimate finding that plaintiff was not disabled were tainted.  Accordingly, the court orders a remand for further administrative proceedings to adequately develop and assess the medical evidence as necessary, in order to determine an RFC that is properly supported.

## DISCUSSION

## VI.    **RFC/WEIGHING EVIDENCE**

### A.    **Legal Standards**

#### 1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues

are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v.*

*Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.   Application

Plaintiff makes several arguments challenging the ALJ's evaluation of the medical opinion evidence and RFC evaluation.  Specifically, plaintiff contends that the ALJ failed to properly apply the treating physician rule in weighing the opinion of Dr. Jimenez.  Plaintiff also argues that the ALJ improperly substituted her lay judgment for competent medical opinion, pointing out the absence of any formal medical opinion explicitly supporting the ALJ's RFC determination for light work.  In response, the Commissioner encourages this court to adopt its interpretation of Second Circuit precedent regarding the treating physician rule, and to reject the plaintiff's argument that the rule was not properly adhered to.  Defendant also maintains that the ALJ "was not required to tether her RFC assessment to a medical opinion."

It is undisputed that the only formal medical opinion of record explicitly considered by the ALJ was the October 23, 2018 questionnaire prepared by plaintiff's primary care physician, Domingo Jimenez, M.D.  (T. 379-80).  In his assessment, Dr. Jimenez opined that plaintiff's diagnoses, which included lumbar disc disease with

10

sciatica/radiculopathy,[1] resulted in pain, fatigue, and diminished concentration and work pace.  (T. 379).  He indicated that plaintiff would be off task during the work day for a period of "greater than 20% but less than 33%."  (*Id.*).  Dr. Jimenez further opined that plaintiff would have good days and bad days, resulting in work absences of more than four days per month.  (T. 379-80).  With respect to plaintiff's functional capacities, Dr. Jimenez opined that plaintiff could sit for approximately two hours out of an eight hour work-day, and could "stand/walk" for approximately one hour out of an eight hour work day.  (T. 380).  Dr. Jimenez estimated that plaintiff should change positions approximately every 15 minutes.  (*Id.*).  Last, Dr. Jimenez opined that in the context of the work environment, plaintiff could frequently (up to 2/3 of the day) lift up to five pounds, occasionally (up to 1/3 of the day) lift between five to ten pounds, and should never lift over ten pounds.  (*Id.*).

The ALJ referenced Dr. Jimenez's opinion in her decision, citing the physician's opined functional limitations as described above.  (T. 17).  The ALJ went on to state:

> I give this opinion limited weight, as the extreme limitations opined are not consistent with the objective evidence of record, including the conservative course of treatment prescribed, encouragement that the claimant pursue increased exercise, and the claimant's declining of ongoing physical therapy.

(*Id.*).

The court has considered the parties' dispute over which Second Circuit decisions state the proper standard for the deference attributable to analyzing a treating

---

[1]Dr. Jimenez also listed that plaintiff suffered from "Adjustment Disorder" and "Mild Intermittent Asthma."  (T. 379).

physician's opinion.[2]  However, regardless of the standard of deference required in analyzing a treating physician's opinion, it remains axiomatic that if an ALJ assigns the opinion of a treating physician less than controlling weight, it is incumbent upon that ALJ to explicitly consider the *Burgess* factors in explaining the weight ultimately assigned.  *See Estrella,* 925 F.3d at 95-96 ("Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion . . . . [I]f the ALJ decides the opinion is not entitled to controlling weight . . . it must 'explicitly consider' the following, nonexclusive '*Burgess* factors.'").

Here, the ALJ failed to properly assess the *Burgess* factors when she chose to give limited weight to the opinion of Dr. Jimenez.  For example, the ALJ did not consider the first *Burgess* factor – "the frequency, length, nature, and extent of [Dr. Jimenez's] treatment" – before weighing the value of the opinion.  The record reflects that plaintiff maintained a treatment relationship with his primary care physician over the span of five years, yet this consideration is noticeably absent from the ALJ's decision.  Nor did the ALJ explicitly address the second *Burgess* factor – "the amount of medical evidence supporting [Dr. Jimenez's] opinion."  Instead, the ALJ, in

---

[2]The parties have devoted a significant portion of their briefs to discussing the appropriate standard by which a treating physician's opinion may be considered.  (*See* Def.'s Br. at 14-25; Plaintiff's Reply Brief at 1-5; Defendant's Sur-Reply at 1-7).  Namely, the parties dispute whether an ALJ may "consider the quality of a treating source's opinion before deferring to it (as per *Schisler III* [*v. Sullivan,* 3 F.3d 563 (2d Cir. 1993)] and the regulations), or whether the opinion must be credited unless the ALJ can marshal 'overwhelmingly compelling' [evidence] to rebut it (as per *Wagner* [*v. Sec. of Health & Human Servs.,* 906 F.2d 856, 861-62 (2d Cir. 1990)] and its progeny.)."  (Def.'s Br. at 17).

conclusory fashion, observed that Dr. Jimenez's opinions were "not consistent with the objective evidence of record."  A more thorough consideration of what evidence supported the treating physician's conclusions, instead of focusing solely on the evidence that, arguably, did not support his conclusions, may have led to a different analysis.  In any event, the ALJ's failure to explicitly articulate all of the required *Burgess* factors constitutes procedural error.  *Estrella,* 925 F.3d at 95-96.

Thus, the Court must determine if "the substance of the treating physician rule" was "traversed" by examining whether the ALJ provided "good reasons" for her weight assignment. *Id*. at 96.  Here, the ALJ explained that she gave limited weight to Dr. Jimenez's opinion because his opined limitations were inconsistent with "the conservative course of treatment prescribed, encouragement that the claimant pursue increased exercise, and the claimant's declining of ongoing physical therapy."  (T. 17).  Without additional detail or support, however, the court cannot agree that these out-of-context remarks support the ALJ's rejection of Dr. Jimenez's opinion.  For example, the record does not reflect that plaintiff outright refused treatment, as the ALJ suggests.  Instead, the relevant office notes indicate that plaintiff was reluctant because he had tried physical therapy without success, and was interested in moving on to other forms of treatment, such as pain management.[3]  It appears that Dr. Jimenez did encourage him to re-attempt physical therapy at one point.  (T. 333).

Moreover, the ALJ's finding of inconsistency based on a perceived "conservative

---

[3]*See* T. 322 (". . . [plaintiff] states he tried PT in the past but did not find it helpful."); T. 324 (". . . went to physical therapy and after trying back strengthening techniques, but continued to have pain in (bilateral) hips, so stopped PT.").

course of treatment" does not constitute substantial evidence to assign less than controlling weight to Dr. Jimenez's opinion.  At the outset, the court hardly agrees that plaintiff's treatment regiment for his back condition – including a surgical lumbar discectomy[4] and prescription pain medication – constitutes conservative treatment.  In addition, the Second Circuit has held that "[t]he opinion of the treating physician is not to be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129; *Foxman v. Barnhart*, 157 Fed. App'x 344, 347 (2d Cir. 2005) ("the ALJ erred in questioning the validity of [the treating physician's] opinion based on his 'conservative' course of treatment").[5]

For these reasons, the court finds that the ALJ erred by failing to provide good reasons for assigning limited weight to Dr. Jimenez's opinion. "The requirement that the Commissioner provide good reasons is particularly important in cases where, as here, ALJs issue decisions unfavorable to claimants because those reasons allow claimants to better understand the dispositions of their cases." *Sink v. Berryhill*, No.

---

[4]Defendant asks this court to disregard plaintiff's back surgery when considering whether plaintiff's course of treatment was conservative, because "plaintiff's May 2016 surgery marked the *beginning* of plaintiff's alleged period of disability and was considered a great success." (Def.'s Br. at 27).  Defendant's characterization of plaintiff's surgical results appear to be taken from a note from his neurosurgeon indicating that plaintiff was doing "extremely well" one month after his discectomy.  Nevertheless, a thorough review of plaintiff's post-operative medical records reveals that plaintiff's low back pain and extremity numbness persisted despite the surgery.

[5]The court recognizes the Summary Order cited by defendant, *Tricarico v. Colvin*, 681 F. App'x 98, 100-01 (2d Cir. 2017) (summary order), which upheld an ALJ's decision to afford limited weight to a treating physician's assessment based on, among other things, a conservative course of treatment.  In this case, however, the court does not find the "other" evidence to be as compelling as the evidence set forth in *Tricarico*, which included other, less restrictive medical opinions, evidence of claimant's activities of daily living, and the claimant's apparent declination of surgical care recommended by multiple providers.  *Id.*

16-CV-1094, 2019 WL 1915291, at *4 (S.D.N.Y. Apr. 29, 2019) (citing *Snell*, 177 F.3d at 134).

The ALJ's error in assessing Dr. Jimemez's opinion is compounded by her RFC determination, which this court agrees lacks support by substantial evidence in the record. "[I]t is well-established that an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (quotation omitted). An ALJ's "ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson." *Id.*; *see also Roberts v. Comm'r of Soc. Sec.*, No. 17-CV-6817, 2019 WL 1298529, at *4 n.4 (W.D.N.Y. Mar. 21, 2019) (noting that an ALJ is "not a doctor" and may not "substitute [her] own judgment for competent medical opinion"). Accordingly, unless an RFC determination is "so simple and mild" that an ALJ can construct it "based on common sense," the RFC determination must be "supported by medical opinions." *Carla S. v. Comm'r of Soc. Sec.*, No. 19-CV-1405, 2020 WL 7021441, at *3 (W.D.N.Y. Nov. 30, 2020). "Courts have not hesitated to remand a case for further proceedings where the ALJ's RFC finding is not supported by any medical opinion." *Timothy S. v. Comm'r of Soc. Sec.*, No. 19-CV-1141, 2021 WL 661392, at *1 (W.D.N.Y. Feb. 19, 2021) (citing *inter alia Ramos v. Saul*, No. 18-CV-7465, 2020 WL 416413, at *6 (S.D.N.Y. Jan. 27, 2020) (collecting cases)).

In this case, it is undisputed that the ALJ crafted an RFC determination for light

work without relying on a formal medical opinion.  The only formal medical opinion of record was Dr. Jiminez's opinion, the functional limitations in which were rejected by the ALJ as discussed above. Moreover, in her RFC analysis the ALJ did not cite to any informal medical opinions specifically supporting plaintiff's functional capacities, but instead provides a limited summary of the clinical findings and examination results found in plaintiff's treatment notes to support her conclusion that "the objective evidence of record fails to support the level of severity alleged by the claimant."  (T. 16).  Based on this information, the ALJ crafted an RFC determination for the full range of light work, endorsing plaintiff's ability to, among other things, occasionally carry 20 pounds, frequently carry ten pounds, sit for six hours, and stand or walk for approximately six hours in an eight-hour workday.  (*Id.*).  In doing so, the ALJ "impermissibly reviewed the bare medical findings and translated them into functional assessments."  *McKee v. Comm'r of Soc. Sec.*, No. 1:18-CV-01013, 2020 WL 1283884, at *4 (W.D.N.Y. Mar. 18, 2020), *see also Henderson v. Berryhill,* 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding the ALJ's RFC finding was improper "[i]n the absence of the medical opinions rejected by the ALJ" and where the ALJ relied upon "raw medical data" in the plaintiff's treatment notes).

    In arguing that the ALJ's RFC determination is supported by substantial evidence, the Commissioner cites to various Second Circuit decisions for the proposition that an ALJ is permitted to draw inferences from underlying medical evidence to determine a claimant's RFC.  These cases, however, are easily distinguished from the matter presently before this court.  For example, *Monroe v.*

16

*Colvin,* 676 F. App'x 5 (2d Cir. 2017) "stands for the proposition that the record need not contain a formal medical source statement or opinion *if it otherwise contains a useful assessment of a claimant's functional abilities from another medical source.*" *Gregorio C. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01027, 2021 WL 262286, at *4 (W.D.N.Y. Jan. 27, 2021) (emphasis added) (citing *Monroe*, 676 F. App'x at 8-9). However, as is the case here, "[w]here the record does not contain a useful assessment of plaintiff's physical limitations, *Monroe* is of no help to the Commissioner." *Id.* (quoting *Bartha v. Comm'r of Soc. Sec.*, No. 18-CV-0168, 2019 WL 4643584, at *3 (W.D.N.Y. Sept. 24, 2019)).

Likewise, the Commissioner's reliance on *Tankisi v. Comm'r of Social Sec.,* 521 F. App'x 29, 33-34 (2d Cir. 2013) is misplaced.  There, the Second Circuit held that an ALJ was not required to seek a medical source statement or formal medical opinion in determining the claimant's RFC where the medical record was voluminous and included an assessment of the claimant's limitations from a physician.  In this case, unlike in *Tankisi*, the plaintiff's medical record is minimal and does not include any assessment of the plaintiff's physical limitations.  "While in some circumstances, an ALJ may make an RFC finding without . . . opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Muhammad v. Colvin*, No. 6:16-CV-6369, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (internal quotations omitted). However, where the record is devoid of a useful assessment of the plaintiff's limitations, remand is warranted. *See e.g. Schwartz v. Comm'r of Soc. Sec.*, No. 17-CV-

1088, 2019 WL 1969793, at *5 (W.D.N.Y. May 3, 2019); *Bernman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260 (W.D.N.Y. 2018).

Because this matter requires remand for the ALJ to reevaluate the medical evidence and plaintiff's RFC, the court need not address plaintiff's remaining arguments on the merits.  Upon remand, the ALJ should request medical source statements and updated treatment records from plaintiff's treating providers, including the physical therapy and pain management records noted by plaintiff to be absent from the administrative record.  The ALJ should also consider ordering a consultative examination.   As appropriate, upon remand the ALJ should otherwise consider each of the other alleged errors not discussed in this decision in rendering a disability determination.  *See Critoph v. Berryhill*, No. 1:16-CV-00417, 2017 WL 4324688, at *4 (W.D.N.Y. Sept. 28, 2017) ("The ALJ is instructed to consider these additional arguments on remand."); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand.")

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings

consistent with this Memorandum-Decision and Order, and it is

      **ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated: April 15, 2021

                                    Andrew T. Baxter
                                    U.S. Magistrate Judge